UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **DAGOBERTO GILB,** *Plaintiff* | § § § § |
| v. | § § |
| **UNIVERSITY OF HOUSTON AT VICTORIA,** *Defendant* | § § § |

Case No. A-19-CV-831-RP

**ORDER AND REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, filed August 26, 2020 (Dkt. 21); Plaintiff's Opposed Motion to for Leave to File Plaintiff's Sur-Reply to Defendant's Motion to Dismiss, filed October 8, 2020 (Dkt. 25);[1] and the associated response and reply briefs. On December 4, 2020, the District Court referred the motions and related filings to the undersigned Magistrate Judge for disposition and Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I. Background

Plaintiff Dagoberto Gilb is a Mexican American writer and tenured professor at the University of Houston at Victoria ("UHV"), a public university in Victoria, Texas. In July 2009, UHV hired Gilb "as a Writer in Residence," a professor in the Latino Studies department, and the Executive

---

[1] Local Rule 7(f) provides that "[a]bsent leave of court, no further submissions on the motion are allowed." Because Plaintiff's Sur-Reply merely restates the arguments already contained within Plaintiff's response, the Court **DENIES** Plaintiff's Motion for Leave to File Sur-Reply (Dkt. 25).

1

Director of CentroVictoria, a center supporting and promoting Mexican American literature and culture. Dkt. 20 ¶ 24. Gilb alleges that at the time he was hired, UHV agreed that he would have a reduced teaching load and would be required to teach just one course per semester in order to focus on his writing and the CentroVictoria.[2] Gilb alleges that he suffered a stroke in 2009, but that "it did not stop him from his continued work as two books were published in this period." *Id.* ¶ 35. Gilb was granted tenure in August 2010.

Gilb alleges that on July 28, 2017, UHV's president notified him that he would be required to teach two additional courses the following semester, increasing his teaching load to three course per semester. Gilb complains that this "was in violation and contradiction of the previous eight years course of professional practice and ongoing agreement between plaintiff and UHV, as well as the customs and protocols of UHV and academic institutions across the board." *Id.* ¶ 43. Gilb further contends that, by asking him to teach three courses per semester, "UHV illegally and discriminatorily targeted plaintiff in efforts to bully and force plaintiff into either retirement or a complete alteration of his agreement with UHV." *Id.* ¶ 44. Gilb also alleges, without elaboration, that he was "subjected to offensive prejudicial remarks, implications and inferences by UHV supervisors." *Id.* ¶ 45.

Gilb alleges that, after he "opposed these discriminatory and illegal actions," UHV retaliated against him by (1) demanding once again that he teach three courses in the Spring 2018 semester, "including two beginning freshman level English courses," and (2) falsely accusing him of failing to attend a mandatory training course. *Id.* ¶ 48. Instead of teaching the three courses, Gilb took

---

[2] Although Gilb alleges that he was promised he would teach only one course per semester, his employment contract, which Gilb attached to his response, states that the standard teaching load for full time faculty "is 12 credit hours each semester," and "the School of Arts and Sciences may require a nine-hour teaching load for tenured and tenure-track faculty members whose duties and contributions warrant reassigned time." Dkt. 23-1 at 2.

2

leave under the Family and Medical Leave Act ("FMLA"). *Id.* ¶ 53. Gilb further alleges that "UHV bullied and harassed him in an effort to force him into retirement or departure from UHV," but does not describe the alleged bullying and harassment. *Id.* ¶ 54. Gilb is still employed as a tenured professor at UHV.

On July 17, 2019, Gilb filed this employment discrimination lawsuit against UHV in state court for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE § 21.001. *Gilb v. Univ. of Houston at Victoria*, No. 19-004127 (126th Dist. Ct., Travis County, Tex. July 17, 2019). On August 23, 2019, UHV removed this case to federal court based on federal question jurisdiction pursuant to 28 U.S.C. §§1331, 1441(a). In his First Amended Complaint (Dkt. 20), Gilb alleges national origin, race, and color discrimination under Title VII and the TCHRA; disability and age discrimination under the TCHRA; hostile work environment and retaliation under Title VII and the TCHRA; and breach of contract.

## II.     Legal Standards

UHV contends that Gilb's breach of contract claim should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### A.     Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction and may exercise only such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332.

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

**B.     Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

> the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up).

When considering a motion to dismiss for failure to state a claim, courts do not look beyond the face of the pleadings or refer to extrinsic evidence. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III.   Analysis

UHV argues that Gilb's breach of contract claim should be dismissed under Rule12(b)(1), and that his discrimination claims should be dismissed for failure to state a claim under Rule 12(b)(6). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. Accordingly, the Court considers UHV's sovereign immunity argument before addressing its Rule 12(b)(6) arguments.

#### A.   Sovereign Immunity

UHV argues that Gilb's breach of contract claim is barred by sovereign immunity. "State sovereign immunity is a fundamental aspect of the sovereignty that the states enjoyed before the ratification of the Constitution and the Eleventh Amendment, and it was preserved intact by the Constitution." *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240 (5th Cir. 2005). In most cases, Eleventh Amendment sovereign immunity deprives federal courts of jurisdiction to hear private suits against states. *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996). The Supreme Court

has recognized several exceptions to Eleventh Amendment immunity, however. A state may waive its sovereign immunity "at its pleasure," and, in some circumstances, "Congress may abrogate it by appropriate legislation." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011).

Gilb argues that UHV waived its sovereign immunity by removing this case to federal court. State sovereign immunity consists of two separate and different kinds of immunity: immunity from suit and immunity from liability. *Meyers*, 410 F.3d at 255. Gilb is correct that UHV waived its sovereign immunity from suit by removing this case to federal court. *See Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 616 (2002) (holding that a state waives its Eleventh Amendment immunity from suit when it removes a case from state court to federal court). "But a state may nevertheless retain immunity from *liability* even after it has consented to suit." *Sanders v. Univ. of Texas Pan Am.*, 776 F. App'x 835, 838 (5th Cir. 2019). The Fifth Circuit has clarified that "the Constitution permits and protects a state's right to relinquish its immunity from suit while retaining its immunity from liability." *Meyers*, 410 F.3d at 255. Whether a state has retained a separate immunity from liability is an issue that must be decided according to that state's law. *Id.*

Texas law provides that "sovereign immunity encompasses both immunity from suit and immunity from liability." *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015). Moreover, "[u]nder Texas law, waiver of one form of immunity does not necessarily operate as a waiver of the other." *Carty v. State Off. of Risk Mgmt.*, 733 F.3d 550, 553 (5th Cir. 2013). Instead, immunity from liability is waived if either the Legislature waived this immunity "by clear and unambiguous language," *DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 652 (Tex. 1995), or if the defendant failed to assert sovereign immunity as an affirmative defense. *Carty*, 733 F.3d at 555.

Here, UHV asserted sovereign immunity as an affirmative defense in its answer,[3] and the Texas Legislature has not expressly waived immunity from liability with regard to breach of contract claims.[4] UHV's removal of the case to federal court, therefore, did not act as a waiver of its immunity from liability, and Gilb's breach of contract claim is barred by sovereign immunity. *See Skinner v. Gragg*, 650 F. App'x 214, 218 (5th Cir. 2016) (holding that county did not waive its immunity from liability by removing case to federal court where it asserted sovereign immunity as an affirmative defense in its answer and legislature had not expressly waived immunity from liability on plaintiff's claims). Accordingly, UHV's Motion to Dismiss should be granted with regard to Gilb's breach of contract claim.

### B.   Discrimination Claims

Next, UHV argues that Gilb's race/national origin/color, disability, and age discrimination claims under Title VII and the TCHRA fail because Gilb has not alleged an adverse employment action. Title VII and the TCHRA[5] prohibit employment discrimination based on an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2; TEX. LAB. CODE § 21.051. The TCHRA also prohibits employment discrimination based on age and disability. TEX. LAB. CODE

---

[3] *See* Defendant's Original Answer, Dkt. 1-3 at 33.

[4] *See Huff v. Texas A & M Univ.*, No. CV H-18-3531, 2020 WL 918606, at *2 (S.D. Tex. Feb. 26, 2020) ("The Texas Legislature has not waived TAMU's sovereign immunity from suit for breach of contract claims brought in federal court."); *Rosario v. Texas Veterans Comm'n*, No. A-18-CV-1008-RP, 2019 WL 5595234, at *4 (W.D. Tex. Oct. 29, 2019) (finding that plaintiff's breach of contract claim was barred by sovereign immunity where there was no waiver of immunity by the Texas Legislature); *Jackson v. Texas S. Univ.*, 997 F. Supp. 2d 613, 648 (S.D. Tex. 2014) (stating that "Texas courts have uniformly held that as a matter of law contract and quasi-contract claims such as promissory estoppel and quantum meruit are barred by sovereign immunity").

[5] The analysis for discrimination claims under the TCHRA generally is the same as that under Title VII and the other federal anti-discrimination statutes. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) ("Because one of the purposes of the TCHRA is to provide for execution of the policies of Title VII of the Civil Rights Act of 1964, we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA.") (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W. 3d 629, 633-34 (Tex. 2012)).

§ 21.051. Discrimination claims under Title VII and the TCHRA are analyzed under the framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

A plaintiff must establish a prima facie case of discrimination before the case may proceed. *Id.*[6] To demonstrate a prima facie case race and age discrimination, Gilb must show that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (age discrimination); *McCoy*, 492 F.3d at 556-57 (race discrimination). Similarly, to prove a prima facie case of disability discrimination, Gilb must show that (1) he has a disability; (2) he is qualified for the job; and (3) UHV made its adverse employment decision because of his disability. *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013). Thus, all three of Gilb's discrimination claims require him to demonstrate that he suffered an adverse employment action.

An adverse employment action is "a judicially-coined term referring to an employment decision that affects the terms and conditions of employment." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). "Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492 F.3d at 559. An employment action that does not affect job duties, compensation, or benefits is not an adverse employment action. *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 160 (2020).

---

[6] Once the plaintiff meets his initial burden, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *See McDonnell Douglas*, 411 U.S. at 802. If the employer proffers a legitimate, nondiscriminatory reason, the burden then returns to the plaintiff to prove that the employer's reason is pretext for unlawful discrimination.

Here, Gilb does not allege that UHV made an ultimate employment decision. Gilb remains a full tenured professor at UHV, a Writer in Residence, and the Executive Director of CentroVictoria. Gilb does not allege that he was demoted, denied leave, or denied a pay raise. Indeed, Gilb admits that UHV "has never provided plaintiff with any negative evaluations regarding plaintiff's job performance or any indication that plaintiff was not in good standing with UHV." Dkt. 20 ¶ 60.

Gilb alleges that UHV's requirement that he increase his teaching load from one to three courses per semester was an adverse employment action. *Id.* ¶¶ 42, 48. But Gilb does not allege that UHV ever followed through on this requirement. The mere threat of an ultimate employment decision that never came to fruition is insufficient to establish an adverse employment action. *See Nkemakolam v. Northside Indep. Sch. Dist.,* No. 5:15-CV-99-DAE, 2015 WL 3651546, at *4 (W.D. Tex. June 11, 2015) (finding that teacher did not allege an adverse employment action where superintendent recommended that board of trustees not renew teacher's contract but threat was not executed); *Brandon v. Sage Corp.*, 61 F. Supp. 3d 632, 644 (W.D. Tex. 2014) ("A mere threat to reduce pay is not an ultimate employment decision for purposes of establishing an adverse employment action supporting a discrimination claim under Title VII."), *aff'd*, 808 F.3d 266 (5th Cir. 2015); *see also Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 586 (S.D. Tex. 2015) (concluding that an unimplemented decision to discipline an employee is not a materially adverse employment action in the retaliation context).

Even if UHV required Gilb to teach three courses per semester, it does not rise to an adverse employment action. The addition to or change in job responsibilities does not constitute an adverse action "unless the change is so drastic as to constitute a functional demotion." *Price v. Wheeler*, No. 20-10380, 2020 WL 6389964, at *4 (5th Cir. Oct. 30, 2020) (finding that plaintiff's allegation

that she was asked to perform administrative tasks outside her job description was not adverse employment action); *see also Southard v. Texas Bd. of Crim. Just.*, 114 F.3d 539, 555 (5th Cir. 1997) ("Undesirable work assignments are not adverse employment actions."); *Ellis v. Compass Grp. USA, Inc.*, No. 1:08-CV-366, 2010 WL 4792668, at *6 (E.D. Tex. Oct. 18, 2010) ("Imposing a higher workload on an employee than on her coworkers does not constitute an ultimate employment action."), *report and recommendation adopted*, 2010 WL 4791603 (E.D. Tex. Nov. 18, 2010), *aff'd*, 426 F. App'x 292 (5th Cir. 2011).

Gilb's complaints involve administrative matters regarding teaching assignments, which are not considered adverse employment actions. See *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998) (finding that complaints about being assigned an unusually heavy work load was an administrative matter and did not constitute an adverse employment action). As the Fifth Circuit has reasoned, federal courts are not the appropriate forum to seek redress for teaching assignments, administrative matters, and university departmental procedures:

> In public schools and universities across this nation, interfaculty disputes arise daily over teaching assignments, room assignments, administrative duties, classroom equipment, teacher recognition, and a host of other relatively trivial matters. A federal court is simply not the appropriate forum in which to seek redress for such harms.
>
> We have neither the competency nor the resources to undertake to micromanage the administration of thousands of state educational institutions. Of all fields that the federal courts should hesitate to invade and take over, education and faculty appointments at [the university] level are probably the least suited for federal court supervision.

*Dorsett v. Bd. of Trustees for State Colleges & Universities*, 940 F.2d 121, 123-24 (5th Cir. 1991) (citations and internal quotation marks omitted).

Based on the foregoing, the Court finds that Gilb has not alleged facts arising to an adverse employment action. *See Kunik v. New York City Dep't of Educ.*, No. 15 Civ. 9512, 2020 WL

508897, at *6 (S.D.N.Y. Jan. 31, 2020) (finding that increased course load that was not "so burdensome as to constitute a departure from normal academic practice" was not an adverse employment action); *Edwards v. Huntington Union Free Sch. Dist.*, 957 F. Supp. 2d 203, 211 (E.D.N.Y. 2013) ("Plaintiff has failed to provide evidence that being required to teach two classes in addition to his administrative duties was a material change in his employment."); *Huber v. Texas Woman's Univ.*, 504 F. Supp. 2d 198, 203 (S.D. Tex. 2007) (finding that university's decision to have a professor teach platform courses was not an ultimate employment decision protected by Title VII's anti-discrimination provisions).[7] Accordingly, Gilb has not alleged a prima facie case of employment discrimination under Title VII and the TCHRA. [8]

**C.    Hostile Working Environment Claim**

Gilb also alleges that he was subject to a hostile working environment. Gilb alleges that UHV "illegally and discriminatorily targeted plaintiff in efforts to bully and force plaintiff into either retirement or a complete alteration of his agreement with UHV." Dkt. 20 at ¶ 44.

To allege a hostile work environment claim under Title VII, Gilb must demonstrate that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of his employment; and (5) his employer knew or should have known of the harassment and failed to take prompt remedial action. *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 617 (5th Cir. 2020).

---

[7] *See also Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1011, 1015 (9th Cir. 2018) (holding that assignment to teach remedial math classes, a subject for which teacher was not certified, was not an adverse employment action); *Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1070 (7th Cir. 2012) (holding that teacher's "assignment to teach seventh grade rather than third grade" was not an adverse employment action).

[8] Gilb's Response raises several new allegations that were not contained in his Complaint. *See* Dkt. 23 at 14-15. When ruling on a motion to dismiss, the Court does not consider additional facts that are alleged in a brief but not in the complaint. *See Leal v. McHugh*, 731 F.3d 405, 407 n.2 (5th Cir. 2013); *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 263 (5th Cir. 2008); *Wilson v. Deutsche Bank Tr. Co. Americas*, No. 3:18-CV-0854-D, 2019 WL 2578625, at *4 (N.D. Tex. June 24, 2019). Moreover, the new allegations are related to Gilb's hostile environment and retaliation claims, not his discrimination claims.

"When the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (cleaned up). For conduct to be considered sufficiently severe or pervasive, it "must be both objectively and subjectively offensive." *Badgerow*, 974 F.3d at 618. In determining whether an employee's work environment was objectively offensive, courts consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or merely an offensive utterance; and whether it interferes with an employee's work performance; no single factor is determinative. *Id.*

Gilb does not allege facts showing that he was the victim of severe or pervasive harassment based on his race, national origin, age, or disability. Gilb alleges that he was subjected to "offensive prejudicial remarks, implications, and inferences by UHV supervisors," but does not elaborate. *Id.* ¶ 45. Gilb does not allege that any UHV supervisor or employee ever commented on his race, national origin, age, or disability. Other than alleging that "UHV demeaned and dismissed plaintiff's impressive work" and required him to teach two additional classes, Gilb does not explain how he was harassed by his supervisors. In addition, Gilb alleges no facts showing that any of the alleged comments and demands were based on his race, national origin, age, or disability.

Failure to allege facts demonstrating a work environment with harassment severe or pervasive enough to alter the conditions of the victim's employment is fatal to a plaintiff's claim. *See Whitlock v. Lazer Spot, Inc.*, 657 F. App'x 284, 287 (5th Cir. 2016) (finding that plaintiff failed to state a hostile work environment claim where complaint wholly failed to allege facts demonstrating plaintiff was repeatedly subjected to harassment linked to his race); *Stone v. La. Dept. of Revenue*, 590 F. App'x. 332, 340-41 (5th Cir. 2014) (finding that plaintiff failed to state hostile work

environment claim where she complained of reduced telecommuting privileges and assignment of more work). Accordingly, Gilb has failed to allege a prima facie hostile environment claim.

### D.     Retaliation Claim

Gilb also asserts a retaliation claim under Title VII and the TCHRA. To state a claim for retaliation in violation of Title VII, Gilb must establish (1) that he engaged in activity protected by Title VII; (2) that UHV took adverse action against him; and (3) that a causal connection exists between the protected activity and the adverse action. *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015). Notably, the standard for establishing an adverse employment action in the retaliation context differs from the standard in the discrimination context. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66-68 (2006) (noting that anti-retaliation provisions of Title VII are broader than anti-discrimination provisions). For purposes of a retaliation claim, an adverse employment action is one that "a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. Normally, "petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* at 68. The standard for adverse employment action is tied to the challenged retaliatory act, "not the underlying conduct that forms the basis of the Title VII complaint." *Id.*

Gilb alleges that UHV retaliated against him after he complained to his supervisors about the alleged discrimination, and after he filed his EEOC charge of discrimination. Specifically, Gilb alleges that UHV retaliated against him by (1) demanding again that he "teach three courses beginning in approximately three weeks, including beginning freshmen level English courses"; (2) improperly accusing him of violating UHV's requirement to attend a training course; and

(3) "targeting plaintiff and subjecting him to repeated false and pretextual criticism." Dkt. 20 ¶¶ 48, 106.

None of these allegations rise to the level of an adverse employment action. As with his discrimination claims, the Court finds that requiring a professor to teach two additional classes per semester would not dissuade a reasonable worker from making or supporting a charge of discrimination. Similarly, falsely accusing Gilb of failing to attend a training course does not constitute an adverse employment action to sustain a retaliation claim. "[M]ere accusations, without more, are not adverse employment actions." *Benningfield*, 157 F.3d at 376; *see also Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (finding that investigating alleged violations of departmental policies and making purportedly false accusations are not adverse employment actions).

Finally, Gilb argues that UHV retaliated against him by "targeting Plaintiff and subjecting him to repeated false and pretextual criticism over a period of years . . . to force him to retire or resign." Dkt. 23 at 20. But he alleges no facts to support these conclusory allegations. An employer's criticism of an employee, without more, does not constitute an actionable adverse employment action. *See Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997). Gilb has not alleged a plausible retaliation claim.

## IV.    Order and Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 21). The undersigned **RECOMMENDS** that the District Court **DISMISS** Plaintiff's breach of contract claim under Rule 12(b)(1) and **DISMISS** Plaintiff's Title VII and TCHRA claims under Rule 12(b)(6).

**IT IS FURTHER ORDERED** that Plaintiff's Opposed Motion for Leave to File Sur-Reply Relating to Defendant's Motion to Dismiss (Dkt. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

### V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on December 30, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE